# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
          **Plaintiff,**

                            **Case No. 2:21-cv-10928**

                            **District Judge Denise P. Hood**
                            **Magistrate Judge Kimberly G. Altman**

**v.**

**$3,840,772.58 U.S. dollars constituting
125 international wire transfers seized
From U.S. correspondent bank, Citibank,
between December 21, 2020 and
January 4, 2021,**

**$1,025,446.18 U.S. dollars constituting
42 international wire transfers seized
from U.S. correspondent bank, JPMorgan
Chase Bank, between December 21, 2020
and January 4, 2021,**

**$765,143.73 U.S. dollars constituting
40 international wire transfers seized
from U.S. correspondent bank, Bank of
New York Mellon, between December 21,
2020 and January 4, 2021,**

**$145,466.52 U.S. dollars constituting
6 international wire transfers seized
from U.S. correspondent bank, Mashreq
Bank PSC, between December 21, 2020
and January 4, 2021,**

**$387,337.51 U.S. dollars constituting
13 international wire transfers seized**

from U.S. correspondent bank, Standard
Chartered Bank, between December 21,
2020 And January 4, 2021,

$159,616.77 U.S. dollars constituting
6 international wire transfers seized
from U.S. correspondent bank, Deutsche
Bank Trust Company Americas, between
December 21, 2020 and January 4, 2021,

$2,288,936.63 U.S. dollars constituting
67 wire transfers seized from U.S.
correspondent bank, Citibank, N.A.,
between May 3, 2021 and May 21, 2021,

$1,449,112.82 U.S. dollars constituting
44 wire transfers seized from U.S.
correspondent bank, JPMorgan Chase Bank,
between May 3, 2021 and May 21, 2021,

$1,348,713 U.S. dollars constituting
44 wire transfers seized from U.S.
correspondent bank, Bank of America,
between May 3, 2021 and May 21, 2021,

$636,373.90 U.S. dollars constituting
28 wire transfers seized from U.S.
correspondent bank, Bank of New York
Mellon between May 3, 2021 and May 21,
2021,

$20,155 U.S. dollars constituting
2 wire transfers seized from U.S.
correspondent bank, Deutsche Bank
and Trust Company Americas; between
May 3, 2021 and May 21, 2021, and

$34,000 U.S. dollars constituting
2 wire transfers seized from U.S.

correspondent bank, Mashreq Bank PSC,
between May 3, 2021 and May 21, 2021,

                          Defendants,

FAR EAST FOOD TRADING, LLC et al., Claimants.


## CLAIMANT'S RESPONSE AND INCORPORATED BRIEF IN OPPOSITION TO UNITED STATES' MOTION FOR ENTRY OF ORDER STAYING CIVIL FORFEITURE PROCEEDINGS PURSUANT TO 18 U.S.C. § 981(g)

NOW COMES Claimant, Far East Food Trading, LLC et al. (the "Claimant"), by and through counsel, and hereby move this Honorable Court to deny United States' Motion for Entry of Order Staying Civil Forfeiture Proceedings. In support of their response in opposition, Claimant states as follows:

## INTRODUCTION

The United States instituted this civil forfeiture proceeding in the Eastern District of Michigan. The Government has seized in excess of twelve million United States Dollars ($12,000,000.00) and over four hundred wires (400) between December 21, 2020 to January 4, 2021 and May 3, 2021 to May 21, 2021 from numerous claimants. Approximately fifteen months have passed since the initial seizure and the recently filed Government's motion to stay that now pends before this Court. After initially becoming aware of these seizures, Claimant hired counsel to effectuate return of the seized assets. The

Government's seizures and subsequent period of inaction and delay with respect to these funds have deprived the Claimant of significant working capital to operate its businesses.

Due to the Government's delay in unsealing any part of the docket or providing necessary information related to the seizure for over ten months after the seizure, on July 20, 2021, Counsel for one such Claimant, Advotis General Trading, LLC ("Claimant Advotis"), filed a Rule 41(g) Petition in this Court that contested the propriety of the seizure on a variety of legal grounds. *Advotis General Trading LLC v. United States of America*, 2:21-MC-50963; ECF No. 3. On August 11, 2021, the Government filed its response in opposition to Claimant Advotis' Rule 41(g) Petition. *Id.*; ECF No. 6. The Government primarily argued, among other things, that this Court should not address Petitioner arguments advanced in the Rule 41(g) Petition. In support of this argument, the Government stated that Petitioner's "statutory and constitutional arguments . . . can all be raised, **and responded to**, by the government, in the proper context of the pending civil forfeiture proceedings." (emphasis added). *Id.*; ECF No. 6 at 6.

Therefore, based on the Government's inconsistent and questionable actions in these proceedings, needless delay in all aspects of the civil forfeiture proceeding and criminal investigation, and erroneous interpretation of 18

U.S.C. § 981(g)(1) in support of its motion to stay, Claimant adamantly opposes the Government's motion to stay.

## PROCEDURAL BACKGROUND

On August 11, 2021 the Government filed the first Amended Complaint [ECF No. 5]. This Court unsealed the first Amended Complaint on November 1, 2021. [ECF No. 26] On September 30, 2021, the Government filed a Second Amended Complaint. [ECF No. 9]. To date, the initial complaint filed in this Court remains sealed, and counsel for Claimants have yet to receive information necessary to contest the legality of the Government's seizures. Information critical to the appropriate resolution of this drawn-out case, such as the underlying warrant or related affidavit for the seizure, remains under seal. On October 26, 2021, Claimant Advotis filed a motion to stay the current proceedings pending the issuance of a ruling in Defendant's Motion to Request Remission of Seized Funds in the case of *Advotis General Trading, LLC v. United States of America 21-MC-50963*. [ECF No. 20]. On November 9, 2021, the Government filed a Motion to Strike Documents Filed by Nonparties to This Action—primarily directed at Claimant Advotis' motion to stay. [ECF No. 28].

By filing the motion to strike, the Government, once again, has evidenced an intent to proceed on the civil docket without delay. Mirroring the Government's purported desire to continue the forfeiture proceedings, Claimants filed motions to dismiss on procedural and substantive grounds on February 14, 2022, and February 25, 2022. [ECF Nos. 88, 102]. In response, on March 3, 2022, the Government attempted to serve special interrogatories on the claimants. ***Three business days later***, AUSA Gjon Junca contacted undersigned counsel and requested her position as to the Government's Motion to Stay proceedings. Finally, on March 11, 2022—seven months after the United States filed the first Amended Complaint[1]—the Government filed its own motion to stay proceedings. [ECF No. 116].

## ARGUMENT

A. Legal Standard

The Sixth Circuit for the U.S. Court of Appeals has acknowledged that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014). The Sixth Circuit has also noted that "[a] stay of civil proceedings pending due to a pending criminal investigation is

---

[1] The length of time is even greater based on the filing of the initial complaint, which remains under seal.

an extraordinary remedy." *Id.* at 627 (quoting *United States v. Ogbazion*, 2012
WL 4364306, at *1 (S.D. Oh. 2012)).

Pursuant to 18 U.S.C. § 981(g)(1), however, a civil forfeiture proceeding
must be stayed under the following circumstance:

> Upon the motion of the United States, the court shall stay the civil forfeiture
> proceeding if the court determines that civil discovery will adversely affect the
> ability of the Government to conduct a related criminal investigation or the
> prosecution of a related criminal case.

When determining whether a criminal case or investigation is related to a
civil forfeiture proceeding, the court "shall consider the degree of similarity
between the parties, witnesses, facts, and circumstances involved in the two
proceedings, without requiring an identity with respect to any one or more
factors." 18 U.S.C. § 981(g)(4).

Therefore, upon motion, the Government must make two showings to the
court in order to receive a stay of civil proceedings pending a criminal
investigation: (1) civil discovery will adversely affect the government's ability
to conduct a criminal investigation or prosecution; and (2) the criminal
investigation or prosecution is related to the civil forfeiture proceeding.

This statutory standard is not merely a procedural formality. To satisfy
these requirements in its motion to stay, the "government must make an **actual
showing** that civil discovery will affect the investigation or prosecution of a

related criminal case." *U.S. v. Currency $716, 502.44*, 2008 WL 5158291, at *4 (E.D. Mich. 2008) (emphasis added) (quoting *U.S. v. All Funds on Deposit in Suntrust Account Number XXXXXXXXX8359*, 456 F.Supp.2d 64, 65 (D.D.C. 2006)). Conclusory and unsubstantiated allegations of adverse effects faced by the government are not enough. *See Currency $716, 502.44*, 2008 WL 5158291, at *4 ("Neither the fact that the Government would be subject to civil discovery, nor bare assertions of hardship . . . satisfy this statutory standard."). *See also U.S. v. Leasehold Interests In 118 Ave. D, Apartment 2A*, 754 F.Supp. 282, 287 (E.D.N.Y. 1990) ("Mere conclusory allegations of potential abuse or simply the opportunity by the claimant to improperly exploit civil discovery, however, will not avail on a motion for a stay.").

B. A Stay Is Not Required Because the Present Civil Proceeding Is Not a Related Case

For the determination of whether a civil and criminal case are related, "neither the parties nor the facts in the civil and criminal case need to be identical." *U.S. v. GAF Financial Services, Inc.*, 335 F.Supp.2d 1371, 1373 (S.D. Fla. 2014). *See also In re Ramu Corp.*, 903 F.2d 312, 319 (5th Cir. 1990) (requiring a "common-sense, fact bound analysis" in determining whether a forfeiture proceeding is related to a criminal indictment). In order to be related, however, the civil and criminal case must retain similarity between parties,

8

witnesses, facts, and circumstances. 18 U.S.C. § 981(g)(4). In cases where the "parties, issues, relevant facts and transactions are different," criminal actions "are not related to [] civil forfeiture actions." *U.S. v. Banco Cafetero Intern.*, 107 F.R.D. 361, 365 (S.D.N.Y. 1985).

In support of its motion to stay, the Government has not made the requisite showing that its criminal investigation and this civil forfeiture proceeding are related. Here, the Government has attempted to tie all Claimants in the Second Amended Complaint together based on conclusory and unsubstantiated allegations of a foreign, hierarchical "Shadow Exchange." [ECF No. 9, at p. 14–15]. Through these baseless allegations, the Government has attempted to manufacture relatedness absent a cognizable connection between the claimants.

The problematic nature of the Government's overall strategy can most readily be seen in the Second Amended Complaint: the Government asserts wrong-doing by three specific foreign companies and uses these actions to implicate the remaining companies. [ECF No. 9, at p. 15–19]. However, those three companies are not present in this civil forfeiture proceeding. *Compare Currency $716, 502.44*, 2008 WL 5158291, at *5 (finding civil and criminal cases related when the direct loan proceeds from mortgage fraud were deposited into one deposit account, creating a direct link between the two cases), *with Banco*

*Cafetero*, 107 F.R.D. at 365 (finding no relation between the criminal and civil case because the parties, issues, and relevant facts and transactions were different).

Presumably, the Government will continue to advance the "Shadow Exchange" theory *ex parte* under seal; or it will continue to rely on facts inconsequential to the related inquiry such as the companies' geographic location. Regardless of the Government's basis, however, these assertions do not align with a "common-sense, fact-bound analysis." *In re Ramu Corp.*, 903 F.2d at 319. Claimants to this case are independent, foreign corporations that have had their business transactions seized by the Government. The Government's basis for the Claimants' relatedness rests on an unacceptable level of generality—that is, companies located in Dubai, U.A.E. and engaged in international commerce. This approach ignores the legally-independent nature of these incorporated entities as Claimants, the differences in the location of the seized transactions' beneficiaries, and absence of specific allegations of wrongdoing against any of the claimants to this proceeding. The Government has failed to adequately allege connections between the Claimants and specific wrong-doing in the Second Amended Complaint; without more, it cannot be said that relatedness also extends to a separate criminal investigation. Further, in a truly bizarre section of their motion, the

Government disparages undersigned counsel, attributing her motive in requesting still-sealed documents as collusion with a criminal organization in an attempt to sabotage the secret, criminal investigation of which undersigned counsel has no knowledge.

C. The Timing of the Government's Stay Is Improper and Substantiates the Conclusion That Denying the Stay Will Not Adversely Affect the Government's Criminal Investigation

Pursuant to Federal Rule of Civil Procedure 3, "a civil action is commenced by filing a complaint with the court." F.R.C.P. 3; *see U.S. v. Six Negotiable Checks in Various Denominations Totaling One Hundred Ninety One Thousand Six Hundred Seventy One Dollars and Sixty Nine Cents*, 207 F.Supp.2d 677, 682–83 (E.D. Mich. 2002) (concluding that the civil forfeiture proceeding was commenced on the Government's date of filing the complaint). As noted by the Government in its motion to stay, district courts do enter stays of civil forfeiture proceedings based on adverse effects to the criminal investigation where supported. [ECF No. 116, at p. 9]. Yet, contrary to the Government's erroneous assertion, a showing of adverse effects does not necessarily require a stay. The Court may determine that a stay is unnecessary and elect to enter a protective order as an alternative means of balancing the protections and interests of both parties. 18 U.S.C. § 981(g)(3).

11

In the current proceedings, the Government has not met its burden of an actual showing of adverse effects to a related criminal investigation. Up until the filing of this motion, the Government has evidenced a full intent to advance these civil forfeiture proceedings. For example, the Government has filed three total complaints with this Court, with the first amended complaint filed on August 11, 2021. [ECF No. 5]. Generally, courts grant stays at the beginning of civil proceedings. *See U.S. v. Eleven Thousand One Hundred Thirty Nine Dollars and Ninety One Cents in U.S. Currency*, 2009 WL 541068, *1 (E.D. Mich. 2009) (granting stay after the government filed the motion to stay less than three months after the civil proceedings began); *See also U.S. v. Four Hundred Sixty Three Thousand Four Hundred Ninety Seven Dollars and Seventy Two Cents*, 799 F.Supp.2d 969, 712 (E.D. Mich. 2011) (denying stay when the government refused to seek indictment based on evidence held for over two years).

In contrast to the norm of staying proceedings at the outset, over ***seven months*** have lapsed in which the Government has been involved in these forfeiture proceedings and ***almost fifteen months*** have passed since the initial seizures. Surely, the Government's assertions of "foreseeable discovery and other litigation" were foreseeable at the outset of the filing complaint. [ECF No. 116, at p. 11] The Government has stated its intent to strike all

noncompliant claimants and seek default judgements in these proceedings.
[ECF No. 28, at p. 5]. It has served interrogatories upon verified claimants.
Finally, it adamantly opposed claimant Advotis' Rule 41(g) Petition by citing
the presence of this proceeding as the appropriate forum to raise—and for the
Government to respond to—constitutional and statutory arguments. Yet, it
also viciously opposed Advotis' motion to stay the civil forfeiture proceedings.
These are just some of many examples of the Government fully participating
as a party to these proceedings.

At no point, until March 3, 2022, *over eight months* into the civil
proceedings, did the Government seek a stay. The Government cites "judicial
efficiency" as a basis to support its motion yet there is nothing efficient about
proceeding along a civil route for over eight months then requesting a stay
based on alleged adverse effects that would have been known by the
Government at the outset. By electing to proceed in this manner through civil
forfeiture, the "government has already lost the element of surprise." *U.S. v.
Contents of Accounts*, 2010 WL 2682397, at *2 (W.D.Ky. 2010). Due to the civil
complaint and the seizures, "[d]efendants are already on notice of numerous
issues the government is investigating." *Id.* It seems unlikely that the forfeiture
proceedings would cause any adverse effects on any related criminal

investigation. If the Government was truly concerned about adverse effects, it would have moved to stay these proceedings much earlier in the process.

D. The Government's Open-Ended Stay Is Inequitable, Deprives Claimants of Due Process, and Constitutes an Impermissible Interpretation of 18 U.S.C. § 981(g) and Supplemental Rule G.

The Government has placed an emphasis to the adherence of Supplemental Rule G in sworn documents submitted to this Court and in the motions hearings held on October 8, 2021, and December 6, 2021. However, the Government itself has failed to adhere to Supplemental Rule G standards, in addition to failing to observe constitutional and due process protections. Of particular note, Supplemental rule G requires a heightened pleading standard. The Government has not met its burden of a normal pleading and falls far short of the heightened standard required of Rule G.

The Government requests an inequitable open-ended stay that will further deprive Claimants of the opportunity to contest these forfeitures and ultimately resolve the proceedings. Although district courts do enter stays of civil forfeiture proceedings, open-ended indefinite stays—such as the one requested by the Government—are disfavored. *See U.S. v. Four Hundred Sixty Three Thousand Four Hundred Ninety Seven Dollars and Seventy Two Cents*, 604 F.Supp.2d 978, 982 (E.D. Mich. 2009 ("However, having seized a substantial

14

amount of money, the government is not entitled to protect its information indefinitely."); *U.S. v. Four (4) Contiguous Parcels of Real Property Situated in Louisville, Jefferson County, Ky.*, 864 F.Supp. 652, 655–66 (W.D. Ky. 1994) (denying the government's stay due to the "length of time that the Government has held Claimant's property, the uncertain duration of the proposed stay, and the real potential that Claimant's 5th Amendment right to due process of law would be violated"); *U.S. v. All Funds Deposited In Account No. 20008524845, First Union National Bank*, 162 F.Supp.2d 1325, 1332 (D. Wyo. 2001) ("This court is mindful of the burdens civil forfeiture places on claimants/defendants. However, the current stay is for a determined length of time.").

The Government's request constitutes an impermissible, open-ended stay. In its motion, the Government does not establish any definitive end to the stay. Rather, it proffers status reports every 90 days to this Court "wherein the government will report whether a stay of proceedings is still required." [ECF No. 116, at p. 12–13]. The Government's interpretation of the limits of 18 U.S.C. § 981(g)(1) is clearly erroneous. First, the Government is essentially requesting an indefinite stay; every 90 days, the Government can furnish a report and extend the stay. This leaves Claimants in the dark and without a meaningful opportunity to respond. Second, the Government's motion ignores the crucial fact that it is this Court—not Government—that determines the

15

necessity of a stay. Furnishing a report to the Court does absolve the Court of its responsibility to adjudicate these proceedings with the appropriately balanced interests of both parties in mind. The Government has had almost one and a half years to bring criminal charges since the initial seizures. Indefinite delay continues to add to the burdens imposed on the Claimants.

Inexplicably, the Government has now decided it no longer wishes to entertain these forfeiture proceedings. Although the Government alleges adverse effects as its reasons for the stay, these *ex parte* communications to the Court are dubious, at best. As aptly stated by the district court for the Western District of Kentucky in denying the government's motion to stay based on similar circumstances:

> The blanket stay is also inequitable for a number of reasons. The government made the calculated decision to seize what Defendants characterize as substantially all of their business and personal assets— including their cars and money to pay their mortgage—prior to an indictment or the filing of a civil complaint. Defendants then challenged some of those seizures, which had the effect of requiring the United States to file a civil forfeiture action within 90 days. (citations omitted). Now, the government seeks to stop the train it set in motion by requesting a stay of civil discovery. In essence, it takes advantage of the civil forfeiture procedures, then tries to halt the civil suit when it becomes inconvenient. This might be more acceptable where Defendants retained the property for the pendency of the action, but it seems inequitable and unreasonable to apply a blanket stay where the government retains the property. *U.S. v. Contents of Accounts*, 2010 WL 2682397, at *2.

Granting the motion to stay will exacerbate the harmful effects of the Government's stop-and-go behavior in this case. The Government's decision to disentangle itself from these proceedings after evidencing full intent to litigate up until now places an undue burden on Claimants by preventing Claimants from obtaining their property. Furthermore, the Government's request places it in the uniquely advantageous position of deciding to stay or resume proceedings based on a status report every 90 days; this one-sided request adds to the increasingly inequitable nature of the Government's conduct throughout these proceedings. For these reasons, as dictated by case law in the Sixth Circuit, the Court must deny the Government's motion.

## CONCLUSION

WHEREFORE, for the reasons stated above, Claimant FAR EAST FOOD TRADING LLC, by and through undersigned counsel, requests that this Honorable Court enter an Order denying the United States' Motion for Entry of Order Staying Civil Forfeiture Proceedings and also enter an Order for reasonable attorney's fees.

Respectfully submitted,

*/s/ Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
rc@attorneyrebeccacastaneda.com

The Castaneda Law Firm PLLC 506 N
Armenia Drive
Tampa, FL 33609-1703

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed on March 25, 2022, with the Clerk of the Court using the CM/ECF system which will automatically transmit an electronic copy to the Assistant United States Attorney of record.


By:   */s/ Rebecca L. Castaneda*
        Rebecca L. Castaneda
        Florida Bar No. 1007926
        rc@attorneyrebeccacastaneda.com
        The Castaneda Law Firm PLLC
        506 N. Armenia Avenue
        Tampa, Florida 33609-1703