## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

            **Plaintiff,**

v.

**CURRENCY $3,840,772.58 DOLLARS
CONSTITUTING 125 INTERNATIONAL
WIRE TRANSFERS SEIZED FROM U.S.
CORRESPONDENT BANK, CITIBANK, et al.,**

            **Defendants.**

**Case No. 21-10928**

**Hon. Denise Page Hood**

_____/

## OPINION AND ORDER REGARDING
## MOTIONS TO STAY (#s 20 and 116), MOTION TO STRIKE (#28),
## and MOTIONS TO DISMISS (#s 88, 102)
## and
## ORDER STAYING ACTION

## I.      BACKGROUND

This matter is before the Court on the Government's Motion to Stay the Civil

Forfeiture Proceedings Pursuant to 18 U.S.C. § 981(g) due to an ongoing criminal

investigation and the Government's Motion to Strike and the Government's Motion

to Strike Documents Filed by Nonparties to this Action (ECF Nos. 116, 28).  Also

before the Court are Certain Claimants' Motions to Stay and to Dismiss for Lack of

Subject Matter Jurisdiction.  (ECF Nos. 20, 88, 102) Briefs have been filed and oral

arguments held on the various motions.

The Government filed the Complaint for Forfeiture involving certain wire transfers and currencies, which the Government has since amended to add Claimants. The Second Amended Complaint for Forfeiture currently governs this action. (ECF No. 9, 9/30/21)

The Second Amended Complaint alleges that the Defendants *in rem* consist of U.S. dollars wired from, or intended to be wired to, the bank accounts of certain general trading companies mostly located in Dubai, United Arab Emirates (UAE). The Defendants *in rem* were seized in the United States pursuant to seizure warrants authorized by the United States District Court for the Eastern District of Michigan. The seizures occurred during two time periods: 1) between December 21, 2020 and January 4, 2021 ("the first seizure") (detailed in Exhibit 1 to the Second Amended Complaint), and 2) between May 3, 2021 and May 21, 2021 ("the second seizure") (detailed in Exhibit 2 to the Second Amended Complaint). (ECF No. 9, PageID.173) The Defendants *in rem* total 419 U.S. dollar wire transfers. The first seizure amount totaled $6,322,719.29 and the second seizure amount totaled $5,777,292.35. (ECF No. 9, PageID.174-75)

The Government alleges that an organized group of individuals operated an unregistered U.S. dollar money transmitting and money laundering business (the "Shadow Exchange") based in Dubai, UAE. The Shadow Exchange provided services

to persons seeking to transfer U.S. dollars in a manner calculated to avoid anti-money laundering measures of the financial system and the scrutiny of international law enforcement. The Shadow Exchange also conspired with store-front money exchanges located in Dubai that seek to avoid complying with anti-money laundering laws of the United Arab Emirates and the United States. Customers of the Shadow Exchange also included at least one international criminal organization. (ECF No. 9, PageID.183)

The Shadow Exchange provided its illegal money transmitting and money laundering services by utilizing General Trading Companies ("GTC") (distribution companies that buy commodities and sell them to large-scale buyers, who then further sell the goods down the stream of commerce) as shell companies to internationally transfer U.S. dollars. The numerous GTCs, mostly based in Dubai, have the appearance of operating independently but are in fact all utilized as payment vessels for the Shadow Exchange. The GTCs utilized by the Shadow Exchange included companies that are purely money transmitting vessels with no legitimate business. The Shadow Exchange also utilized the bank accounts of operational GTC businesses to process its illegal U.S. dollar wire transfers. Whether or not the GTCs conducted some legitimate business, the Shadow Exchange used the GTCs as shells to obfuscate the true source of the U.S. dollar funds being wired, the purpose of the transactions being conducted, and the identity of the senders and/or beneficiaries of the transaction. The

Shadow Exchange also created fraudulent documents for the purposes of concealing the true funding source of its international U.S. dollar wire transactions. The fraudulent documents were provided to financial institutions and U.S. investigators for the purpose of misleading entities attempting to verify the true purpose and source of the financial transactions initiated by the Shadow Exchange through its ready stable of GTCs.  (ECF No. 9, PageID.184-85)

The Government further alleges that the Shadow Exchange also services transnational criminal organizations without regard to the origins of the funds it is transmitting. For example, the Shadow Exchange conspired with a transnational drug trafficking organization to utilize multiple Shadow Exchange GTCs for the U.S. dollar purchase of armored vehicles from a foreign company. The underlying drug conspiracy was initiated in the Eastern District of Michigan.  (ECF No. 9, PageID.192)  The Government claims that the Defendants *in rem* U.S. dollar wire funds are property involved in a conspiracy to wire transfer U.S. dollars into and through the United States, in violation of 18 U.S.C. §§ 371, 1956(h) and 1960. The Defendants *in rem* U.S. dollar wire funds are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved transactions or attempted transactions in violation of 18 U.S.C. § 1956 (money laundering) and/or 18 U.S.C. § 1960 (unlicensed money transmitting business).  (ECF No. 9, PageID.195)

4

Related to this forfeiture action are four miscellaneous cases filed by the same counsel seeking return of certain funds subject to the forfeiture action: 1) Case No. 21-mc-50963, *Advotis General Trading, LLC v. United States*; 2) Case No. 21-mc-51029, *Perfect Frame, LLC v. United States*; 3) 21-mc-51128 *Capricorn Good Wholesalers, LLC v. United States*; and, 4) Case No. 21-mc-51162, *Camaro Impex General Trading LLC v. United States*.

## II.  GOVERNMENT'S MOTION TO STAY CIVIL FORFEITURE PROCEEDINGS PURUANT TO 18 U.S.C. § 981(g) (ECF No. 116)

The Government seeks a stay of any discovery Claimants are seeking or will seek in this forfeiture action, except for: any new verified claims to claimants who receive notice of this forfeiture action proceeding from the Government; the Court's rulings on the Government's pending motion to strike pleadings; the Court's ruling regarding the related miscellaneous cases; and, any agreed upon resolution of any pending claims as to any defendant *in rem* in this proeeding.

Certain Claimants oppose the motion arguing that the Government has not shown that this forfeiture action is related to a crimial investigation.  They argue that the Government's attempt to tie all Claimants to a "Shadow Exchange" is conclusory and based on unsubstantiated allegations.  Certain Claimants assert they are independent, foreign corporations that have had their business transactions seized by the Government with no specific allegations of wrongdoing against the Claimants.

Certain Claimants claim that the Government disparages their counsel, attributing her motive in requesting still-sealed documents as collusion with a criminal organization in an attempt to sabotage the secret, crimial investigation of which she has no knowledge.

Certain Claimants further assert that the timing of the Government's request to stay is improper given that this matter has been pending for over seven months and almotst fifteen months since the seizures of Certain Claimants' assets. Up until the filing of the motion to stay, Certain Claimants argue that the Government sought to proceed with the forfeiture action by filing motions to strike certain claims, by seeking discovery as to Certain Claimants' motions to dismiss and opposing Certain Claimants' Rule 41(g) Petitions filed in miscelleneous cases. Certain Claimants further argue that the forfeiture proceedings would not cause any adverse effect on any related criminal investigation since the claimants already have notice on the Government's ongoing criminal investigation. They claim that if the Government was truly concerned about adverse effect, it would have moved to stay the proceedings much earlier in the process. Certain Claimants also argue that the open-ended stay deprive Claimants of due process and the one-sided 90-day status reports adds to the inequitable nature of the Government's conduct.

In its reply, the Government claims at no point has the Government suggested

that counsel is colluding with a criminal organization.  As to any *ex parte* affidavit in support of its motion, the Government argues that the statute and law clearly permit such.  The Government claims it is merely acting within the confines of the law to protect ongoing and related criminal investigation and that it did not and does not have precognitive abilities to determine precisely how the criminal investigation would develop when the forfeiture action was filed.  The Government asserts it attempted to advance the forfeiture action until Certain Claimants filed motions to dismiss, which now warrants the stay of the proceedings, in addition to Certain Claimants' requests for discovery.  As noted by the Government in its motion, the Government has asked that certain aspects of the litigation continue, such as agreed upon resolutions between the Government and Certain Claimants/Defendant *in rem*, and rulings on pending motions.  The Government asserts it is aware that if the Court determines whether a stay is warranted, the Government will provide 90-day reports to the Court.

As to whether the Government met its burden regarding whether adverse effects on a related criminal investigation, the Government argues that it has stated certain facts in the Second Amended Complaint and in the *ex parte* affidavit detailing the ongoing criminal matter.  As to the specific assets seized related to Far East Food Trading, LLC, Far East acknowledges some of its "working capital" was seized.  The Government asserts it is unaware that Far East is left without "all of its business assets

and personal assets–including their cars and money to pay their mortgage" since it merely seized Far East's "working capital," as acknowledged by Far East.   The Government argues it has met the requirements to stay the proceedings.

18 U.S.C. § 981 governing civil forfeiture proceedings provides:

> (g)(1) Upon the motion of the United States, the court *shall* stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.
>
> *   *   *
>
> (4) In this subsection, the terms "related criminal case" and "related criminal investigation" mean an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made. In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.
> (5) In requesting a stay under paragraph (1), the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial.
> (6) Whenever a civil forfeiture proceeding is stayed pursuant to this subsection, the court shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect.

18 U.S.C.A. § 981 (West).

8

As provided by the statute, the Government may submit evidence *ex parte* to support its request for a stay.  The Court has reviewed the *ex parte* affidavit submitted by the Government and the Second Amended Complaint and finds that there is an ongoing criminal investigation and criminal prosecution related to the instant civil forfeiture proceeding.

Regarding whether the civil discovery will adversely affect the ongoing criminal investigation and prosecution, the *ex parte* affidavit provided in detail how the search/seizure warrants were obtained, executed and listed items that were seized. There continues to be ongoing investigations, including the issuance of subpoenas. The investigation is wide-ranging and voluminous.  The Government has sufficiently shown that allowing civil discovery in this forfeiture proceeding would harm the ongoing investigation by revealing the Government's knowledge of the Shadow Exchange and its methods, the identities of others involved, and exposing the direction of the Government's investigation which may involve yet unknown sources of information and may cause targets to evade such investigation techniques and destroy evidence.

The Court grants the Government's request to stay the matter, except to rule on pending matters already heard; allows the Government to resolve with the various Defendants in rem certain claims if agreed upon; and allows the submission of 90-day

status reports by the Government.

## III.   CERTAIN CLAIMANTS' MOTIONS TO DISMISS (AND JOINDERS) (ECF Nos. 88, 102)

On February 14 and 25, 2022, the docket shows that Currency $3,840,772.58 US Dollars constituting 125 international wire transfers seized from U.S. Correspondent Bank, Citibank, filed Motions to Dismiss, which were really filed by Claimants Far East Food Trading, LLC and Warehow Trading, LLC, respectively. ECF Nos. 88, 102.  The Government filed on March 4, 2022, a Notice of Defendant of Government's Time to Respond to the Pending Motions to Dismiss Pursuant to Supplemental Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Supplement Rule G(6)(c) provides that a response to the Motions to Dismiss in this civil forfeiture action is deferred until 21 days after each served party answers the Special Interrogatories served by the Government.

The Court finds that any motion to dismiss a forfeiture in rem action is governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and that the sufficiency of a complaint of forfeiture is governed by Rule G(2) of the Supplemental Rules.   Based on the Special Interrogatories served by the Government, any response to the Motions to Dismiss is deferred until the appropriate parties so answer.  The Government must notify the Court when such answers have been served on the Government.  At this time, the

10

Court denies without prejudice the Motions to Dismiss pending the Claimants'
answers to the Special Interrogatories and the Stay issued in this matter.  These
Motions may be renewed after the parties have met and conferred as to a time line for
refiling the motions, filing any responses and replies.  The parties will submit a
stipulation and order regarding such time line and the Court will thereafter set a
hearing date on the refiled Motions to Dismiss.

## IV. GOVERNMENT'S MOTION TO STRIKE DOCUMENTS FILED BY NONPARTIES IN THIS ACTION (ECF No. 28)

The Government seeks to strike documents filed by nonparties to this action.
Certain Claimants in this action have filed documents under the named Defendant
Currencies even though these Claimants are *not* the Defendants in rem.  This action
is a civil forfeiture action against in rem Defendants–in this case the various
*currencies* listed as Defendants.  The Government did not file forfeiture claims against
individual entities or individuals.   The Government asserts that to become a
"claimant" in this forfeiture action, a party must file a verified claim to a defendant
in rem and answer pursuant to Rule G of the Supplemental Rules For Admiralty Or
Maritime Claims and Asset Forfeiture Actions ("Rule G"). The Government claims
no verified claims have been filed at the time the motion was filed.  The nonparty
appearances and various documents filed by nonparties in this case must be stricken
because the Government asserts that none of these entities have established statutory

11

standing with the filing of a verified claims as Rule G(5) requires, nor have they established standing which requires information regarding the claimant's relationship to the seized property.

In response, certain Claimants argue that despite previously arguing that the Claimants' Rule 41(g) Petitions could be addressed in this civil asset forfeiture proceeding, the Government now argues that Claimants have no role in this litigation. Claimants argue that it was not until they filed their Rule 41(g) Petitions on July 18, 2021, that the Government was forced to respond to Claimants' requests for return of their funds. At the time of the Rule 41(g) Petitions, Claimants assert that the Complaint in the Civil Forfeiture action was still under seal. Because of the pending Rule 41(g) Petitions, Claimants filed in this civil forfeiture action a Motion to Stay pending the outcome of the Rule 41(g) Petitions, which, if Claimants prevailed, would render any further action by the Government as moot.

The Court's review of the docket shows that Notices of Appearances filed by Claimants were improperly filed. Counsel for Claimants filed appearances on behalf of and under a named-Defendant Currency, *not* on behalf of Claimants. Claimants are not named-Defendants in this in rem civil forfeiture action and the Government did not name these Claimants as Defendants in this case. Claimants are to file Notices of Appearance similar to the Notices of Appearances filed on behalf of Straight Way

General Trading in ECF Nos. 34 and 35, not under a named-Defendant Currency. Claimants are to file Verified Claims like the Verified Claim filed by Straight Way General Trading in ECF No. 36, under the Claimants' name, not under a named-Defendant Currency.  This means that each Claimant must file a separate Verified Claim and counsel must file an appearance for each Claimant.

The Court noted this in a previously-filed Order, along with a reference to the Court's website on how parties/claimants are added to the docket.  See ECF No. 112, PageID.663.  Certain Claimants have not followed the proper procedure and have not properly filed appearances and Verified Claims.  The docket is confusing in that it appears that some named-Defendant Currency is represented by counsel and Verified Claims are "filed by" certain named-Defendant Currency.  These are not the proper ways to file appearances nor Verified Claims under the Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and this Court's CM/ECF Electronic Filing Policies and Procedures.  The Claimants and the various Defendants Currencies are not the same parties.  The Claimants should appear separately as Claimants from the Defendants Currencies.  Counsel for the Claimants should file appearances on behalf of Claimants, not on behalf of the Defendants Currencies.  The Court refers Claimants and counsel to the Electronic Case Filing Information and Resources found on the Court's website on how to properly add

parties/claimants on the docket.

The Court grants the Government's motion to strike.  The Court strikes the improper Notices of Appearances and Verified Claims which were filed under a named-Defendant Currency, along with the Motions to Dismiss filed by the improperly filed Claimants.  Certain Claimants may refile the Motions to Dismiss once they have properly filed Verified Claims, along with properly filing the motion under Rule G noted above,  and counsel has properly filed appearances on behalf of the Verified Claimants.

## V.     CLAIMANTS' MOTION TO STAY (ECF No. 20)

On October 26, 2021, the docket shows that Currency $3,840,772.58 US Dollars constituting 42 international wire transfers seized from U.S. Correspondent Bank, JP Morgan Chase Bank , between December 21, 2020 and January 4, 2021, filed Motions to Dismiss, which was really filed by Claimant Advotis General Trading, LLC.  Claimant Advotis sought a stay to stay all deadlines in this Civil In Rem Forfeiture action pending the issuance of a court ruling in its Motion to Request Remission for Seized Funds filed in the miscellaneous Case No. 21-mc-50963, *Advotis General Trading, LLC v. United States of America.*  ECF No. 20.  In lieu of a response, the Government filed a Motion to Strike, as noted above.

The Court notes that at the time Claimant Advotis filed its Motion to Stay, the

Court had yet to issue a scheduling order, therefore no deadlines were pending and there was nothing to stay. The Court denies Claimant Advotis' Motion to Stay as premature and in light of the Court's ruling on the Government's Motion to Strike above.  In any event, the Court has now granted the Government's Motion to Stay pending the resolution of the underlying criminal case.

## VI.  ORDER

For the reasons set forth above,

IT IS ORDERED that the Government's Motion to Stay forfeiture proceedings pursuant to 18 U.S.C. § 981(g) **(ECF No. 116, 3/11/22)** is **GRANTED**.   The Government will file 90-day reports as to the status of this matter.

IT IS FURTHER ORDERED that Defendant Currency $3,840,772.58 US Dollars constituting 125 international wire transfers seized from U.S. Correspondent Bank, Citibank filed a motion, considered as Claimant Far East Food Trading LLCs Motion to Dismiss for Lack of Subject Matter Jurisdiction **(ECF No. 88, 2/14/22)**, Joined by other Claimants, and Defendant Currency $3,840,772.58 US Dollars constituting 125 international wire transfers seized from U.S. Correspondent Bank, Citibank filed a motion, considered as Claimant Warehow Trading LLC's Motion to Dismiss for Lack of Subject Matter Jurisdiction **(ECF No. 102, 2/25/22)**, Joined by other Claimants, are **DENIED without prejudice**.  Once the Stay has been lifted, and

the Government has received responses to its Special Interrogatories, counsel for the Government and the properly filed Verified Claimants may submit a stipulation and order under the CM/ECF proposed order mailbox as to the time line for refiling any motions to dismiss, and filing of the responses and replies.

IT IS FURTHER ORDERED that the Government's Motion to Strike Documents **(ECF No. 28, 11/9/21)** is **GRANTED**. The following entries are **STRICKEN: ECF Nos. 16-19, 24-25, 47-53, 55-61, 71-87, 115, 132-133.** Counsel for Claimants may refile these entries under the appropriately added Claimant on the docket, *not* a named-Defendant Currency, by following the example noted above and the appropriate e-filing procedures as set forth on the district's website under the "E-Filing" tab, such as the "Adding Parties" or under the "references and resources" and "FAQs" tabs. The Help Desk is also available to assist parties and counsel at 313-234-5000 (Chambers staff are unable to assist on filing instructions). Counsel for Claimants may refile properly Verified Claims, noting the dates these improperly filed Claims were initially filed under the in rem Defendant and not under a specific Claimant's name.

IT IS FURTHER ORDERED that Defendant Currency $1,025,446.18 U.S. Dollars constituting 42 international wire transfers seized from U.S. correspondent bank, JP Morgan Chase Bank, between December 21, 2020 and January 4, 2021,

considered as Claimant Advotis General Trading, LLC's Motion to Stay **(ECF No. 20)** is **DENIED**.

      IT IS FURTHER ORDERED that this forfeiture action is **STAYED** pending the underlying criminal action.  The Government must hereafter file its subsequent 90-day Status Reports. The Government will notify the Court as soon as possible once the forfeiture action can proceed and the stay can be lifted.

                               s/Denise Page Hood         
                               DENISE PAGE HOOD
                               United States District Judge

DATED: September 6, 2023

17